OPINION
Robert H. Woodward pled guilty to possession of crack cocaine. The Montgomery County Court of Common Pleas sentenced him to one year in prison and suspended his driver's license for one year. Woodward appeals from this conviction, raising two assignments of error.
The state's evidence established the following facts.
On March 20, 2000, Lieutenant Michael Brown was patrolling the Princeton Heights area of Dayton in an unmarked police car. His purpose was to address concerns of citizens in the area regarding open air drug sales. While on patrol in the 600 block of Oxford Avenue, Lt. Brown observed a gray Chevrolet automobile driving erratically. As he watched, the vehicle made a U-turn and stopped briefly while the passenger, Woodward, spoke to some people on the street. The vehicle then made another U-turn, and Lt. Brown coasted forward in his car to continue observing the situation. The vehicle proceeded to improperly back up across a street and park on Oxford. At this point, Woodward exited the vehicle and entered a duplex that was known by police to be an area where drug dealers congregated. Woodward soon returned to the vehicle, and Lt. Brown followed it, observing it cross the center line. The driver again parked the vehicle, and this time the driver exited the vehicle and went into an apartment building for less than a minute.
At this point, Lt. Brown radioed for a marked police car to stop the Chevrolet. Two detectives and two officers responded. The police initiated the stop while the vehicle was at a red light. Lt. Brown and one of the detectives approached the passenger's side of the vehicle, while the other three approached the driver's side. The passenger, Woodward, was asked to exit the vehicle and did so. He was then instructed to place his hands on the roof of the car behind the door and was patted down by the detective. While the detective was conducting the pat-down, Woodward removed his left hand from the car and moved it slowly toward his left jacket pocket. When Woodward's hand began to enter his pocket, Lt. Brown "took control" of it and placed it back on the vehicle. When he did so, Woodward's pocket gaped open, and Lt. Brown saw a plastic baggy partially hanging out of the pocket that contained what appeared to be crack cocaine. Lt. Brown then removed the crack cocaine from Woodward's pocket. Woodward was then handcuffed and placed under arrest.
A grand jury indicted Woodward for possession of crack cocaine in an amount between five and ten grams on March 27, 2000. He initially pled not guilty to the charge. On July 5, 2000, Woodward filed a motion to suppress, and the trial court held a hearing on the motion on September 15, 2000. The trial court denied the motion on February 8, 2001 in a written decision. Woodward then pled guilty to the charge on March 19, 2001 pursuant to a plea bargain in which he was to receive the minimum sentence of one year. The trial court subsequently sentenced Woodward to one year imprisonment and suspended his license for one year.
Woodward raises two assignments of error.
 I. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS.
 II. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.
Woodward argues that the trial court erred in overruling his motion to suppress. Because he pled guilty, we are barred from considering this issue. See Huber Heights v. Duty (1985), 27 Ohio App.3d 244, 244. However, this issue is tied to Woodward's second assignment of error, in which he argues that his trial counsel was ineffective in allowing him to plead guilty when he had a meritorious issue for appeal on the motion to suppress. Thus, the disposition of Woodward's second assignment of error depends on whether his first assignment of error has merit. We will therefore review the trial court's denial of Woodward's motion to suppress.
Woodward argues that the police did not have reasonable suspicion to conduct the pat-down search. Woodward does not challenge the stop of the vehicle or his removal from it. He challenges only the pat-down search that resulted in the discovery of the crack cocaine.
Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress:
 [W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.
State v. Retherford (1994), 93 Ohio App.3d 586, 592.
The state argues that the police had reasonable suspicion to frisk Woodward pursuant to Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868. To justify a pat-down under Terry, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry,88 S.Ct. at 1880. However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 1883. A Terry pat down, however, is justified solely by "the protection of the police officer or others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Id. at 1884.
The state argues that, because Lt. Brown had reasonable suspicion that Woodward was involved in drug activity, he had reasonable suspicion that Woodward was armed and potentially dangerous. In State v. Evans (1993),67 Ohio St.3d 405, 413, the supreme court noted that "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." Lt. Brown had observed Woodward and the driver of the automobile acting suspiciously. Most importantly, he had observed Woodward exit the vehicle and go into a dwelling where drug dealers were known to congregate. While this may not have been sufficient probable cause for a stop of the automobile or a full search of Woodward, it was certainly sufficient to justify a pat-down search of Woodward. During the pat-down, Woodward's own actions in reaching for his pocket caused the crack cocaine to come into the plain view of Lt. Brown. Therefore, the crack cocaine was not obtained in violation of Woodward's rights, and the trial court did not err in denying Woodward's motion to suppress.
We turn now to Woodward's argument that he was denied the effective assistance of counsel. Initially, we note that we evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See id. at 2064-65. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 2064, 2068. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id. at 2065.
As we have determined that the trial court properly overruled Woodward's motion to suppress, his trial counsel was not ineffective in advising him to plead guilty. In other words, Woodward has failed to satisfy the second prong of the Strickland test: that there is a reasonable probability of a different result had Woodward pled no contest and appealed the adverse suppression ruling.
Furthermore, Woodward's guilty plea was tendered as a result of a plea bargain in which Woodward pled guilty in exchange for receiving the minimum possible sentence. Although not necessary to the disposition of this assignment (because Woodward has not satisfied the second prong of Strickland), the record demonstrates that Woodward's pleading guilty, and thus waiving his right to appeal the denial of his motion to suppress, was a bargained for condition of his receiving the minimum sentence, in which case he has also failed to satisfy the first prong of the Strickland test.
Woodward also argues that his trial counsel failed to fully advise him regarding the implications of his plea. We have no evidence in the record from which we can ascertain what Woodward's counsel did or did not tell him regarding the effects of a guilty plea. Woodward argues that we should nevertheless assume that his counsel did not effectively advise him because he clearly planned to appeal the denial of his motion to suppress and would not have pled guilty had he realized that he would then be unable to appeal. However, as we noted above, Woodward pled guilty in exchange for receiving the minimum sentence of one year out of a sentencing range of one to five years. Therefore, even disregarding the fact that Woodward's argument relies on facts outside the record, there is an explanation for his guilty plea. Furthermore, the trial court conducted a thorough Crim.R. 11 colloquy and determined that the plea was made knowingly and voluntarily. Therefore, this record fails to demonstrate that Woodward's trial counsel was ineffective in allegedly failing to advise him of the implications of his plea.
Woodward's assignments of error are overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.